MARY SMITH et al., Appellants, *v.* MICHAEL RYAN et al., as Executors and Trustees under the Will of MARY M. FLYNN, Deceased, et al., Respondents.

1. DEED — FRAUD IN PROCUREMENT THEREOF — WHEN DEED MAY BE AVOIDED AT LAW. There are two classes of fraud by which a deed of real property can be avoided: (1) Fraud in the consideration; in which case the grantor is induced to convey his property by fraudulent representations as to the value, nature or character of the consideration which he receives for the conveyance. (2) Fraud in the execution of the deed; in which case the grantor is deceived into the execution of an instrument of the contents of which he is ignorant. In the first case the assent of the party though obtained by fraud is, nevertheless, obtained not only to the execution of the instrument, but to the contract which it evidences. In the second case there is procured only the signature to and execution of the written instrument, but not assent to the contract therein stated. In cases of this latter class the deed can be avoided at law.

2. SAME — DEED OF INCOMPETENT PERSON — VOIDABLE, NOT ABSOLUTELY VOID — WHEN IT MAY BE AVOIDED AT LAW. The deed of a person of unsound mind, who has not been judicially declared incompetent, is voidable, not absolutely void, but it by no means follows that

such deed can be avoided only in equity. A deed by an incompetent person falls within that class of deeds which may be avoided as fraudulent upon the ground that the party was misled by deception and has never assented to the contract. The ground on which the deed of an incompetent is avoided is that by infirmity of intellect he is incapable of giving assent. The element that avoids the deed is lack of assent, and it is not material whether it exists through deceit or through imbecility.

3. EJECTMENT — EVIDENCE — ERRONEOUS EXCLUSION OF PROOF TENDING TO SHOW THAT DEED WAS EXECUTED BY AN INCOMPETENT PERSON. Where, in an action of ejectment, in which the plaintiffs claimed title as heirs at law of a decedent, who was concededly, at one time, seized and possessed of the premises, and the defendants claimed title through a deed executed by decedent, which was put in evidence at the trial, and in rebuttal thereof the plaintiffs sought to prove that, at the time of the execution of such instrument, the decedent was of unsound mind and incompetent, it was reversible error for the trial court to exclude the latter evidence on the ground that, as the said decedent had not been judicially declared incompetent, the deed could be avoided only in equity, and to direct a verdict for the defendants.

*Smith* v. *Ryan*, 116 App. Div. 397, reversed.


(Argued March 6, 1908; decided March 31, 1908.)


APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 31, 1906, affirming a judgment in favor of defendants entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.


*Louis H. Hall* and *Henry B. Twombly* for appellants. Whether the deed of Michael L. Flynn, under which defendants claim, was voidable only or wholly void, the plaintiffs had the right to sue in ejectment, and when the deed was set up to defeat their claim, to meet the defense by showing the incompetency of the grantor; or that the deed was procured by fraud, or any facts whatever which would establish that either legally or equitably it was invalid as between these parties. (*Blinn* v. *Schwarz*, 63 App. Div. 25; 177 N. Y. 252; *Phillips* v. *Gorham*, 17 N. Y. 270; *N. Y. I. Co.* v. *N. Ins. Co.*, 23 N. Y. 560; *Mandeville* v. *Reynolds*, 68 N. Y.

543 ; *Van Deusen* v. *Sweet,* 51 N. Y. 378 ; *Clapp* v. *Byrnes,* 155 N. Y. 535 ; *Babcock* v. *Clark,* 93 App. Div. 119 ; *Wilcox* v. *A. T. & T. Co.,* 176 N. Y. 115 ; *Sullivan* v. *T. Ins. Co.,* 169 N. Y. 213 ; *O'Meara* v. *B. C. R. R. Co.,* 16 App. Div. 204.)

*Edward W. S. Johnstone, Charles E. Le Barbier* and *James A. Boylan* for respondents. The plaintiffs' remedy, if any, is in equity to set aside the deed of their ancestor. They cannot maintain an action of ejectment merely on the proof that they offered that the grantor was insane, when concededly the deed was given for a valuable consideration, and there never had been any adjudication that the grantor was insane, and they neither proved nor offered to prove that there was any fraud which would avoid the deed. (*Riley* v. *Carter,* 25 Atl. Rep. 669 ; 19 L. R. A. 489 ; *Riggan* v. *Green,* 80 N. C. 236 ; 30 Am. Rep. 77 ; *Miles* v. *Lingerman,* 24 Ind. 387 ; *Wait* v. *Maxwell,* 5 Pick. 217 ; 16 Am. Dec. 391 ; *Dennett* v. *Dennett,* 44 N. H. 538 ; *Eaton* v. *Eaton,* 37 N. J. L. 108 ; *Blakeley* v. *Blakeley,* 33 N. J. Eq. 508 ; *Snowden* v. *Dunlavey,* 11 Penn. St. 525 ; *Fitzgerald* v. *Reed,* 9 S. & M. 94 ; *Allen* v. *Berryhill,* 27 Iowa, 540 ; *Elston* v. *Jasper,* 45 Tex. 409.) Even if the plaintiffs had offered proof that the deed in question had been taken with knowledge of the grantor's infirmities and was made without consideration and by practicing upon the grantor's infirmities, still the remedy of the plaintiffs would have been in equity and not at law in ejectment. (*Osterhout* v. *Shoemaker,* 3 Hill, 513 ; *Wilcox* v. *Am. T. & T. Co.,* 176 N. Y. 115 ; *Cleary* v. *M. E. Light Co.,* 19 N. Y. Supp. 951 ; *Dixon* v. *B., C. & N. Ry. Co.,* 100 N. Y. 170 ; *Littlejohn* v. *Leffingwell,* 47 App. Div. 379 ; *Crawford* v. *Scofell,* 94 Penn. St. 48 ; *Pratt* v. *Pond,* 5 Allen, 59 ; *Burton* v. *Gleason,* 56 Ill. 25 ; *Stearns* v. *Harmon,* 80 Va. 48 ; *Smith* v. *Cockrell,* 66 Ala. 64.)

CULLEN, Ch. J. The action was ejectment to recover premises in the city of New York. The plaintiffs claimed as

heirs at law of one Michael L. Flynn, concededly at one time seized and possessed of the premises, who died January 14th, 1889. Defendants claimed title through a deed executed by said Flynn, bearing date January 25th, 1887, to John Dollard, and another made by said Dollard on January 27th of the same year to Mary M. Flynn, the wife of said Michael L. Flynn. They also claimed title through a will of said Michael L. Flynn made on March 13th, 1885. The complaint alleged that the plaintiffs were entitled to the immediate possession of the premises, and that the defendants wrongfully withheld the possession thereof. The answers of the several defendants set forth the deeds and will above recited. On the trial the plaintiffs proved the possession and ownership of Michael L. Flynn, his death and that they were his heirs at law. The defendants put in evidence the deeds and will. In rebuttal the plaintiffs sought to prove that at the time of the execution of those instruments Michael L. Flynn was of unsound mind and incompetent. This evidence the court excluded on the ground that as the said Flynn had not been judicially declared incompetent the deed executed by him could be avoided only in equity, and thereupon directed a verdict for the defendants. It was conceded that the validity of the will might be assailed for lack of competency on the part of the testator, but an attack on the will would have been profitless as long as the deed remained unimpeached. The judgment entered on that verdict was affirmed by the Appellate Division by a divided court.

The law is settled in this state that the deeds and contracts of a person of unsound mind, who has not been judicially declared incompetent, are voidable, not absolutely void (*Blinn v. Schwarz*, 177 N. Y. 252), and the same doctrine generally prevails throughout this country and in England. This, however, by no means proves the proposition that such deeds or contracts can be avoided only in equity. As to personal property the law is clear that where a party has the right to rescind or avoid a contract he may do so either at law or in equity. The most familiar instances of this rule are contracts

obtained by fraud. Such contracts are not void, but merely voidable. A vendor defrauded into selling his goods may repudiate the contract and sue in replevin for the goods sold. If on the sale he has received anything from the vendee he must tender a return of what he has received before bringing suit, while in equity it is sufficient that in his bill of complaint he offer a restoration. This is substantially the only difference between the two procedures. (*Gould* v. *Cayuga Co. Nat. Bank*, 86 N. Y. 75; *S. C.*, 99 N. Y. 333.) There are cases of constructive fraud, and those arising from false representations of a promissory character, in which relief can be had only in equity. Where, however, the fraud is of such a nature as would sustain a common-law action of deceit it may safely be said that the contract may be avoided either at law or in equity, at the election of the defrauded party, provided only that at law the offer to rescind must precede the institution of the action.

Some text writers, while conceding that this doctrine is true of personalty, contend that a different rule obtains in the case of real estate. Mr. Bigelow, in his work on Frauds (Vol. 1, p. 76), writes: "If, however, the property sought is realty, the case will be different, according to the general view of the common law. The guilty party acquires indeed only a voidable title, as in the case of personalty; but the title of real estate can be conveyed only by deed, and it follows that it can be divested only by deed. Tender and demand would not then restore the legal title to the defrauded vendor. He would have no right to enter; he could not then expel the purchaser, and he could not maintain an action of ejectment, for that requires a legal title." The authorities cited by the learned author in support of his position (*Pearsoll* v. *Chapin*, 44 Pa. St. 9; *Mitchell* v. *Moore*, 24 Iowa, 394; *Blaney* v. *Hanks*, 14 id. 400; *Nicholson* v. *Halsey*, 1 Johns. Ch. 417) hold merely that where a deed has been duly executed and delivered a subsequent surrender or destruction of it will not divest the estate conveyed, but that a reconveyance should be tendered. In *Feret* v. *Hill* (15 C. B. 207) the only proposition decided

was that representation as to the intended use of premises leased from the defendant being merely promissory and collateral could not defeat the tenant's right to possession in an action at law. The author concedes that the law in Massachusetts is the reverse of that stated by him. (*Bassett* v. *Brown*, 100 Mass. 355.) In this state it has been held that a judgment creditor may, without resort to equity, sell on execution lands conveyed by his debtor in fraud of creditors and that the purchaser at the sale may recover the lands in ejectment (*Chautauque Co. Bank* v. *Risley*, 19 N. Y. 369), and it has never been the practice with us when resort is had to equity, either in a case of a deed fraudulent as to creditors or in one where the deed has been obtained by fraud on the grantor, to do more than to declare the deed fraudulent and void, not to require a reconveyance by the grantee.

Accepting, however, the distinction made by the learned text writer between the principle applicable in realty and that applicable to personalty, there nevertheless are, unquestionably, certain kinds of fraud for which a deed can be avoided at law. It is said in Story's Equity (sec. 60): "Thus, for example, although fraud, accident and trust are proper objects of Courts of Equity, it is by no means true that they are exclusively cognizable therein. On the contrary, fraud is in many cases cognizable in a Court of Law. Thus, for example, reading a deed falsely to an illiterate person, whether it be so read by the grantee or by a stranger, avoids it as to the other party at law." (Citing *Thoroughgood's Case*, 2 Coke, 9.) The same is true as to a deed executed by a blind man. (*Shulter's Case*, 12 Coke, 90.) There are two kinds of fraud which differ essentially in their character; in the one the grantor is induced to convey his property by fraudulent representations as to the value, nature or character of the consideration he receives for the conveyance. This is sometimes called fraud in the consideration. In the other case the grantor is deceived into the execution of an instrument of the contents of which he is ignorant. This is sometimes called fraud in the execution of the deed. The distinc-

tion between the two cases lies just here. It is elementary law that the assent of the parties is necessary to constitute a binding contract. In the first case the assent of the party though obtained by fraud is, nevertheless, obtained not only to the execution of the instrument, but to the contract which it evidences. In the second case there is procured only the signature to and execution of the written instrument, but not assent to the contract therein stated. In cases of this latter class the deed can be avoided at law. ( *Wilcox* v. *American Telephone & Telegraph Co.*, 176 N. Y. 15.) It seems to me plain that a deed by an incompetent person falls within the second class. The ground on which such deeds are avoided in case of fraud is that the party has been misled by deception and has never assented to the contract. The ground on which the deed of an incompetent is avoided is that by infirmity of intellect he is incapable of giving assent. The element that avoids the deed is the same in the two cases; lack of assent, and it is not material whether it exists through deceit or through imbecility. The earlier authorities in this state so considered it. In *Jackson* v. *Hills* (8 Cow. 290), where a defense of fraud was ruled out, it was said by the Supreme Court: " The defense was, that the lease was obtained by fraud ; *not that the defendant was incompetent, by reason of age, infirmity, or mental imbecility, to make a valid contract,* or that she was ignorant when she executed the lease, of its nature and effect; but that the lessor was guilty of a misrepresentation as to a part of the consideration or inducement as to the making of the lease." This case is cited with approval in *Osterhout* v. *Shoemaker* (3 Hill, 513), where again the distinction is pointed out between fraud in the consideration of a deed and fraud in its execution. In *Phillips* v. *Gorham* (17 N. Y. 270) the action was to recover the possession of lands. The complaint stated title in the plaintiff as heir at law of a deceased ancestor ; that the defendant was in possession claiming under a deed from said ancestor ; that at the time of the making of such deed to the defendant said ancestor was of unsound mind and wholly incompetent to

make the deed, and that the deed was obtained fraudulently by threats, false promises and other improper influences. The trial court refused to charge the defendant's request that before the deed could be avoided for fraud or undue influence it was necessary to procure a judgment to that effect in an action brought for that special purpose. The action was tried at law before a jury. Recovery by the plaintiff was sustained, this court holding that in an action to recover specific real property the plaintiff might attack a deed under which the defendant claimed upon grounds which were formerly cognizable in equity as well as those cognizable at law. The only criticism that can be made on the application of that decision to the case at bar is that in the case cited the complaint alleged a cause of action in equity as well as at law, while in the one before us the complaint states only a cause of action at law. It is to be observed, however, that the defendants' request to charge presented no contention that, so far as relates to the ground of imbecility, resort must be first had to equity, but was confined to the allegation of fraud. The case is cited with approval in *Mandeville* v. *Reynolds* (68 N. Y. 528, p. 543) where it is said : " So if in an action of ejectment the defense rests upon a deed or will the plaintiffs can make proof that it was procured by fraud or other imposition." Finally, in *Van Deusen* v. *Sweet* (51 N. Y. 378) the Commission of Appeals squarely decided that the deed of an incompetent person could be avoided in an action of ejectment and that it was not necessary to resort to equity. That case, unless it is to be overruled, is decisive of the question before us. There, as in this case, the action was in ejectment, the complaint simply stating that the plaintiff was the owner in fee and entitled to the possession of the real estate therein described, and that the defendant unlawfully withheld possession thereof.

The rule stated seems to generally prevail in this country. In Massachusetts the deed of an incompetent person is voidable, not void (*Allis* v. *Billings*, 6 Metc. 415 ); nevertheless ejectment lies to avoid the deed. The rule obtains in Pennsyl

vania (*Crawford* v. *Scovell*, 94 Pa. St. 48); in Maine (*Hovey* v. *Hobson*, 53 Me. 451); in New Jersey (*Eaton* v. *Eaton*, 37 N. J. Law, 108); in New Hampshire (*Young* v. *Stevens*, 48 N. H. 133); in Indiana (*Brown* v. *Freed*, 43 Ind. 253) and in North Carolina (*Fitzgerald* v. *Shelton*, 95 N. C. 519). It may be objected to the application of some of these authorities that the courts of Massachusetts and Pennsylvania being for a long time without equity jurisdiction resort for relief was necessarily had to the common-law courts, and that in Massachusetts it is not necessary to restore the consideration even, where the contract with the incompetent person has been made in good faith and in ignorance of such incompetency. No state, however, has maintained more steadily the distinction between common-law and equity jurisdiction than New Jersey, and in that state, the same as in our own, a person dealing in good faith with an incompetent person, ignorant of his imbecility, is protected. Yet, as appears by the New Jersey case cited, in an action in ejectment a plaintiff may attack the deed of his ancestor for incompetency. The law seems to be the same in England. (*Ball* v. *Mannin*, 1 Dow. & Cl. 380.)

Let us now turn to analogy. Nearly all the text writers and judicial decisions treat lunacy or mental unsoundness and infancy as disability similar in character and in their effect on the contracts of the parties. In *Bool* v. *Mix* (17 Wend. 119) Judge BRONSON said : " Deeds procured by duress, or executed by persons of unsound mind, stand on nearly the same footing as the deeds of infants." In *Blinn* v. *Schwarz* (*supra*) Judge VANN quoted from Blackstone, Chancellor Kent and the principal text writers on contracts to the effect that the contracts of lunatics and infants were of the same character, not void and mere nullities, but voidable only. It is clearly settled that an infant on arriving at age may avoid his deed in an action at law. (*Jackson* v. *Carpenter*, 11 Johns. 539 ; *Clapp* v. *Byrnes*, 155 N. Y. 535 ; *Craig* v. *Van Bebber*, 100 Mo. 584 ; *Miles* v. *Lingerman*, 24 Ind. 387 ; *Cole* v. *Pennoyer*, 14 Ill. 158; see Tyler on Infancy, p. 69.) We see no

reason why a different rule should apply in the case of persons of unsound mind.

The learned judge who wrote for the majority of the court below relied on a previous opinion rendered by him in the case of *Blinn* v. *Schwarz* (63 App. Div. 25). The only case there cited as authority for the proposition that relief from the deed of a person of unsound mind must be had in equity alone is *Jacobs* v. *Richards* (18 Beavan, 300). But it could have decided no such proposition, for it was not an action at law but a suit in equity. The action was for the foreclosure of a mortgage and all that was there held was that the defense of lunacy must be set up by a cross bill. The only case that I can find supporting the position of the learned justice of the Appellate Division is the case of *Moran* v. *Moran* (106 Mich. 8), but, as conceded in the opinion there delivered, the decision is opposed to the current of authority elsewhere. It is doubtless true that an executed contract made with a person of unsound mind in good faith, for a valuable consideration, without knowledge of such mental unsoundness, will not be set aside or avoided, at least without a return of the consideration paid. (*Mutual Life Ins. Co.* v. *Hunt*, 79 N. Y. 541.) It may also be true that a court of equity could, in such case, deal with the rights of the parties more adequately than a court of law. But this cannot deprive the plaintiffs of their right to try the issue before a jury in a court of law, if that has hitherto been the mode of trial of such an action. Nor is there so great embarrassment in such a trial as has been suggested. If in analogy to the case of fraud it is necessary for the plaintiffs to return the consideration paid before suit brought and they have failed to tender such return (a question we do not decide), then the action will be dismissed and it is the plaintiffs alone who will suffer by resorting to law instead of to equity. If, on the other hand, payment of a valuable consideration in good faith is in the nature of an equitable defense, still the Code of Civil Procedure (sec. 500) in express terms authorizes the interposition and determination of such defenses in an action at law. (*N. Y. Cent. Ins.*

*Co.* v. *Nat'l Protection Ins. Co.*, 14 N. Y. 85.) On this appeal we do not pass on those questions, for the record now before us does not show whether a valuable consideration was paid or, if paid, whether it was paid in good faith, without knowledge of the infirmity of the grantor.

The judgment appealed from should be reversed and a new trial granted, costs to abide the event.

GRAY, VANN, WERNER, WILLARD BARTLETT and CHASE, JJ., concur; HAIGHT, J., not voting.

Judgment reversed, etc.